[Civil No. 4738.   Filed November 19, 1945.]

[163 Pac. (2d) 680.]

L. H. SEARGEANT, Appellant, v. ROSCOE SMITH, Appellee.

Mr. Phil J. Munch, for Appellant.

Mr. R. C. Stanford, Jr., for Appellee.

BLAKE, Superior Judge.—The appellee Smith was a used car dealer and the appellant Seargeant was a licensed money lender under the Small Loan Statute of Arizona. Code 1939, § 51–801 *et seq.* From time to time appellee Smith would find a used car for sale. Appellant Seargeant, after inspection in each instance, would pay the purchase price of the car. The car was then put on appellee Smith's used car lot. The appellant Seargeant held the certificate of title endorsed in blank. In each case appellant Seargeant gave appellee Smith an option on the car. The option entitled Smith to purchase the car for the exact sum of the advanced purchase price. The consideration for the option in each case was the payment by appellee Smith of a monthly sum of $3\frac{1}{2}\%$ of the amount which appellant Seargeant had paid for the car. Whenever appellee Smith sold one of these cars on his used car lot, he would exercise the option by paying appellant Seargeant the amount of money mentioned in the option.

Appellee Smith filed his complaint in the court below setting forth each transaction; that is, the amount of money paid by appellant Seargeant and the amount repaid by appellee Smith, alleging that the sums paid by Smith and received by Seargeant as consideration for the options were interest in excess of eight per cent

per annum in violation of Section 36–102, Arizona Code Annotated 1939, commonly known as the Usury Statute of Arizona.

The case was heard before the court without a jury and judgment was given appellee for the 3½% per month paid in each transaction, except one, aggregating the sum of $576.50, from which judgment appellant Seargeant appeals.

Appellant Seargeant assigns as error that the Court below erred in rendering judgment for appellee. And as a proposition of law, he states that the only issue involved is to be solved by the answer to the question: Did the appellant Seargeant enter into agreements with appellee Smith to loan Smith money at a rate of interest in excess of that allowed to be charged by law, or did appellant and appellee enter into legal contracts?

It is the contention of appellant Seargeant that the contracts were perfectly legal, providing plaintiff Smith with the privilege and right of exercising options for the purchase of automobiles. It is the contention of appellee Smith that the amounts were loans bearing interest at the rate of 3½% per month in violation of the usury statute. It is not disputed that each transaction involved in excess of $300, the maximum amount upon which 3½% per month interest could be legally charged under the Small Loan Statute.

This court in an opinion written by the late Chief Justice Henry D. Ross in *Blaisdell* v. *Steinfeld*, 15 Ariz. 155, 137 Pac. 555, 568, laid down the elements of an usurious contract by adopting the quotations in 39 Cyc. 918 and 919 as follows:

"In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the

sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury."

In passing upon the contracts or transactions before us in this case, guided by the above rules, we find existing therein: the second element, money or money's equivalent; the third element, a loan or forbearance; the fifth element, an exaction for the use of the money in excess of that allowed by law. These elements plainly exist and we do not believe further discussion is necessary. The fourth element, "The sum loaned must be absolutely repayable," is not so obvious and is contended by the appellant in his brief not to exist.

If we find the fourth element does exist, however, then the first element "unlawful intent" is presumed from the mere fact of intentionally doing what is forbidden by statute. Blaisdell v. Steinfeld, *supra*. This leaves for us a determination as to the existence of the fourth element.

In a later statement of the law in 66 C. J. Par. 65, p. 174, the elements of an usurious contract are set forth as follows:

" . . . 1. An unlawful intent. 2. Money or moneys equivalent. 3. A loan or forbearance. 4. An understanding that the loan shall or may be returned. 5. The exaction for the use of the loan of something in excess of what is allowed by law. . . . "

It will be noticed that the first, second, third and fifth elements are almost identical with the same numbered elements of usury as set forth in 39 Cyc. 918 and 919, and adopted in the Blaisdell v. Steinfeld case. The fourth element is materially modified in the later state-

ment of the law. In 39 Cyc. 918 it is stated that the sum involved "must be *absolutely,* not contingently, repayable." In 66 C. J. 174, Sec. 65, Usury, the rule is said to be "An *understanding* that the loan shall or *may* be returned." (Italics ours)

In 66 C. J. Par. 103, p. 194, in commenting on the fourth element of usury, "The principal must be repayable," we find the statement:

" . . . However, a stipulation to repay the principal in money is not necessary to constitute a loan; it is enough that the principal is secured, and not *bona fide* put in hazard."

■ In the case at bar, it appears from the entire transaction that there was an understanding that there existed an obligation to return the amount advanced in payment of each car, and this is further strengthened by the fact that the exact amount was repaid on the sale of each car. The amount advanced was secured by the title to the car being put in appellant Seargeant, and the amount advanced was in no way put in hazard in any greater sense than ordinary loans are put in hazard.

It is our conclusion that there was an implied understanding and promise on the part of Smith to repay the money advanced. The testimony of plaintiff, corroborated in some respect, was that defendant was making loans to him for the purchase of the cars, and that the titles were taken by defendant to secure the loans. We assume that the trial court found this to be true, and obviously, under such circumstances, the titles would be held in trust for Smith. If a loss had resulted to the defendant he could have recovered from plaintiff. The law in such cases raises a promise on the part of the borrower to pay. It then follows that an unlawful intent is presumed, and that each transaction constituted a loan and contains the elements of an usurious contract.

█ It is contended by appellant that appellee Smith's complaint in the lower court is fatal in that it did not allege a promise to repay. This was not made an issue in the lower court and hence cannot now be raised for the first time in this court. *Hallenbeck* v. *Yuma Co.*, 61 Ariz. 160, 145 Pac. (2d) 837.

Appellant's propositions of law numbers one and two raise the question of the rule of law of construction of contracts of this nature, and in support thereof, refer to 66 C. J. Par. 61, p. 172:

"If an agreement can reasonably be construed as non-usurious, it should be so construed. The courts will not hold a contract to be in violation of the usury laws unless upon a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that the intent of the parties was to engage in such a transaction as is forbidden by those laws. However, they have no right to depart from the terms in which the contract is expressed to make legal what the parties have made unlawful; an unlawful intent cannot be imputed as long as the acts of the parties admit of a construction which will render them lawful. If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and unlawful, the court will always adopt the former. In short the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other hypothesis."

█ Attention is called to our usury statute, Sec. 36–102, Arizona Code Annotated 1939, which reads as follows:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than eight dollars ($8.00) on one hundred dollars ($100) for one (1) year; any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

From the fact that the above statute provides against usury *directly* or *indirectly,* and from the undisputed evidence that the appellant Seargeant was a money lender, we believe the rule by which the contract in question should be determined is stated in 66 C. J. § 62, p. 173, as follows:

"Since the penalties of the usury laws are all directed against the lender, and intended for the protection of the borrower, contracts shown to be usurious are construed strongly against the lender."

In 66 C. J. § 64, p. 174, it is stated:

"The courts will closely scrutinize every suspicious transaction in order to ascertain its real nature. In the determination of whether the contract is tainted with usury, the court will look to the whole transaction; it will consider the surrounding circumstances, the occurrence at the time of the making of the agreement, and the instruments drawn. The court will look to and construe the transaction by its substance and effect, rather than its form, and, if from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the court will permit no scheme or device, however ingenious, to hide the face of usury."

██ On this appeal all reasonable inferences which may be drawn from the evidence supporting the judgment must be made. The rule is succintly stated in *Stewart* v. *Schnepf,* 62 Ariz. 440, 158 Pac. (2d) 529. In view of all of the transactions and evidence in this case, construed under the rules above stated, we find the contracts to be usurious.

██ The conclusion of the appellant in his brief that a contract which is usurious must be in writing is without merit.

The judgment of the lower court is affirmed.

LaPRADE and Morgan, JJ., concur.

Chief Justice R. C. STANFORD having disqualified himself, the Honorable BENJAMIN BLAKE, Judge of the Superior Court of Graham County, was called to sit in his stead.